UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CHARLES DUSTIN MYERS,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**DANIEL KENNETH BRANTHOOVER;** )<br>And **MORGAN MICHELLE MYERS,** )<br>)<br>**Defendants.** ) | No. CIV-24-1311-R |

## ORDER

Before the Court is Plaintiff Charles Dustin Myers's Motion for Reconsideration [Doc. No. 31] of this Court's Order [Doc. No. 29] granting Defendants' Motions to Dismiss [Doc. Nos. 18 & 24]. Plaintiff has also filed a Motion for Leave to Supplement Rule 59(e) Motion for Reconsideration, or in the alternative, a Motion for Leave to Amend the First Amended Complaint [Doc. No. 32]. The matter is now at issue.[1] For the following reasons, Plaintiff's Motions are denied.

On December 14, 2023, Plaintiff allegedly discovered that his wife, Defendant Myers, was having an affair [Doc. No. 16, ¶ 19]. That same day, Defendant Myers opened a private bank account and exchanged several text messages with Defendant Branthoover. *Id*. The next day, Defendant Myers transferred $1,576.00 from her joint account with

---

[1] All parties to this action are proceeding *pro se*. The Court therefore gives the pleadings a liberal construction but does not act as an advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Plaintiff to Defendant Branthoover, then traveled to Defendant Branthoover's home in Oklahoma to draft allegedly fraudulent legal documents. *Id*. ¶¶ 23, 25. This transfer caused the account to be overdrawn, which harmed Plaintiff's business. *Id*. ¶ 26. Plaintiff contended that this transfer constituted wire fraud in violation of 18 U.S.C. § 1343, and that Defendant Myers's trip to Oklahoma violated the Travel Act, 18 U.S.C. § 1952. *Id*. ¶¶ 25, 59, 74. On December 17, 2023, Defendant Myers allegedly "completed the interstate transportation phase of the criminal scheme by transporting the fraudulent court documents prepared in Oklahoma back across state lines to Texas." *Id*. ¶ 35. These documents were filed in a Texas court the next day. *Id*. ¶¶ 39-40. On January 16, 2024, Plaintiff was ordered to vacate the home he shared with Defendant Myers. *Id*. ¶ 47. According to Plaintiff, this marked the achievement of Defendants' primary criminal objective. *Id*. ¶¶ 47-48.

Plaintiff filed this civil RICO suit under 18 U.S.C. §§ 1962(c) and (d) and Defendants moved to dismiss for failure to state a claim and improper venue. On August 28, 2025, this Court fully granted Defendants' Motions to Dismiss and entered judgment against Plaintiff, finding Plaintiff failed to state a RICO claim because he did not adequately allege a pattern of racketeering activity [Doc. No. 30]. Doc. No. 29 at p. 3. To allege a pattern of racketeering activity, plaintiffs must demonstrate a relationship between the predicate criminal acts and a threat of continuing activity. *Johnson v. Heath*, 56 F.4th 851, 859 (10th Cir. 2022). A threat of continuing activity may be demonstrated by establishing either open-ended or closed-ended continuity. *Id.*

The Court explained Plaintiff had failed to demonstrate open-ended continuity because communications that occurred after the achievement of Defendants' primary

objective were unrelated to the alleged racketeering activity. Doc. No. 29 at p. 6. Furthermore, the Court found those communications did not plausibly support a continuing threat of criminal conduct. *Id.* The Court also found Plaintiff failed to demonstrate closed-ended continuity. *Id.* at p. 7 (citations omitted).

On September 4, 2025, Plaintiff filed a Motion for Reconsideration of the Court's Order. Doc. No. 31. On September 19, 2025, Plaintiff filed a Motion for Leave to Supplement Rule 59(e) Motion for Reconsideration, or in the alternative, a Motion for Leave to Amend the First Amended Complaint. Doc. No. 32. Plaintiff now asks the Court to reconsider its ruling, arguing (1) that newly discovered fraudulent emails from Defendant Myers's attorney support Plaintiff's position that he adequately pleaded open-ended continuity and (2) that the Court overlooked material allegations and controlling law when granting Defendants' Motions to Dismiss. Doc. Nos. 31, 32.

Federal Rule of Civil Procedure 59(e) "gives a district court the chance 'to rectify its own mistakes in the period immediately following' its decision." *Banister v. Davis*, 590 U.S. 504, 508 (2020) (quoting *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982)). The grounds for granting relief from a judgment under Rule 59(e) "include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *See Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

A Rule 59(e) motion "is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. . . . It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.* (citations

omitted). A motion for reconsideration "is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *Voelkel v. Gen. Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan. 1994) (citation omitted).

"Rule 59(e) motions may be based either on (1) evidence arising after the initial ruling (in which event the party's diligence in seeking the evidence is obviously not a consideration) or (2) evidence available but not discovered at the time of the initial ruling (in which event the moving party must show it diligently sought the evidence earlier)." *Bell v. Bd. of Cnty. Comm'rs*, 451 F.3d 1097, 1102 (10th Cir. 2006) (citing *Webber v. Mefford*, 43 F.3d 1340, 1345 (10th Cir. 1994); *Comm. for the First Amend. v. Campbell*, 962 F.2d 1517, 1523 (10th Cir. 1992)).

With regard to Plaintiff's "newly discovered" evidence, Plaintiff argues he has "now discovered that Defendant Myers'[s] alleged attorney in Texas relied on interstate wires to send fraudulent emails" which contained documents "modified to make it appear as if Plaintiff agreed to the deprivation of his property and business interests, and directly awarded property to Myers, and has been in effect since March 14, 2024." Doc. No. 32 at pp. 2-3. Plaintiff states that this "information became known on September 6, 2025, as Plaintiff discovered that the email address used by Myers'[s] attorney relies on interstate wires to transmit these communications." *Id.* at p. 3.

Beyond conclusory allegations that these emails are newly discovered, Plaintiff provides no coherent argument that the emails actually arose after judgment or were available but not discovered despite his diligent efforts.

First, Plaintiff has not indicated these emails arose after the Court entered judgment on August 28, 2025. Instead, he vaguely states he learned of these emails on September 6, 2025, when he discovered Defendant Myers's attorney used an email that relies on interstate wires. Doc. No. 32 at p. 3. Plaintiff provides no details regarding Myers's counsel or the dates of these emails. Perhaps new emails did originate after the entry of judgment—but Plaintiff's conclusory allegations are not sufficient to allow the Court to conclude this evidence is new.

Second, if the emails were not new, Plaintiff has failed to demonstrate that he diligently sought this evidence before judgment on August 28, 2025. Plaintiff alleges he discovered the emails on September 6, 2025, "[t]hrough reasonable diligence." *Id.* at pp. 2-3. This conclusory statement misunderstands the standard: Plaintiff must show he diligently sought the evidence prior to the Court's entry of judgment but was unable to uncover it. *Bell*, 451 F.3d at 1102. The allegations in Plaintiff's Complaint indicate his awareness that electronic transmissions could rely upon interstate wires. *See.* Doc. No. 16, ¶ 66. Yet Plaintiff does not state he diligently sought this information prior to judgment, nor does he argue, in any coherent manner, that this information was unavailable despite his diligent efforts to uncover it.[2]

---

[2] In his Motion for Reconsideration, Plaintiff briefly mentions additional threats, including threats of bodily injury, since filing this RICO litigation. Doc. No. 31 at pp. 6-7. This "new threat," Plaintiff says, occurred three days after he filed his First Amended Complaint. *Id.* In his Motion to Supplement or Amend, however, Plaintiff fails to mention any threats of bodily injury. In any event, Plaintiff admitted that these ongoing threats occurred prior to entry of judgment, and that he intended to bring them before the Court at the summary judgment stage. *Id.* It appears that Plaintiff could have brought this information before the Court prior to entry of judgment, and thus they do not qualify as "newly discovered"

Because Plaintiff has not satisfied either requirement, the Court denies his Motion for Leave to Supplement 59(e) Motion. In any event, the Court concludes that Plaintiff's allegations related to these emails would not have impacted its decision in favor of Defendants, as discussed below. *See infra* at pp. 10-11.

Plaintiff next contends that the Court's order "overlooked material allegations and controlling law regarding the ongoing nature of the enterprise and the real threat of continued racketeering activity." Doc. No. 31 at p. 20. Specifically, Plaintiff argues the Court failed to consider "that the enterprise's broader objective—fraudulent disposition of property and rights through the divorce—remains unfulfilled, and that the divorce litigation is ongoing" when determining (1) that the Defendants' communications were unrelated to the initial scheme and (2) that the communications did not support an open-ended threat of continuing criminal conduct. *Id.* at pp. 4-7. Plaintiff further argues that reconsideration is warranted "to prevent manifest injustice." *Id.* at p. 10. Because Plaintiff focuses on the Court's analysis of open-ended continuity, the Court will do the same here.

In support of his argument, Plaintiff cites *Resol. Tr. Corp. v. Stone*, 998 F.2d 1534, 1545 (10th Cir. 1993), *abrogated on other grounds by Boyle v. United States*, 556 U.S. 939 (2009), for the proposition that continuity is measured at the time of suit. Doc. No. 31 at p. 5. Plaintiff argues that the Court prematurely measured continuity by focusing solely on the "primary objective" of removing Plaintiff from the family home (which Plaintiff alleged was achieved in January of 2024). *Id.* According to Plaintiff, had the Court

---

evidence or evidence Plaintiff could not obtain with reasonable diligence prior to entry of judgment.

considered the enterprise's broader purpose (defrauding Plaintiff and manipulating judicial proceedings), which remained unachieved when Plaintiff filed suit in June of 2025, it would have found open-ended continuity. *Id.*

To allege the risk of related, continuing criminal activity after achievement of the alleged primary objective, Plaintiff pointed to the following:

- Defendants' continued interstate communication regarding the case "in direct furtherance of their fraudulent scheme to see the divorce through to its finalization[;]"

- Defendant Branthoover's June 23, 2024, text message to Plaintiff stating "Lol. And here comes another denial[;]"

- Defendant Branthoover's December 12, 2024, text message to Plaintiff stating "When things all over you get to deal with me. Just a heads up[;]"

- Defendant Branthoover's statement "I've been enjoying watching every filing get denied[;]" and

- Defendant Branthoover's May 24, 2025, text message to Plaintiff stating "Where's my lawsuit? Heard your vm about me. File it. Let's do this :)[.]"

Doc. No. 16, ¶¶ 49-52.

Plaintiff's argument that the Court failed to consider the enterprise's broader goal misunderstands the Court's Order. Despite Plaintiff's explicit statement in his Complaint that "the enterprise's criminal scheme achieved its primary objective" on January 16, 2024, *id.* ¶ 47, the Court *did* consider Plaintiff's allegations that the enterprise's broader purpose was "to defraud Plaintiff of his property interests and manipulate judicial proceedings." Doc. No. 29 at pp. 6-7 (quoting Doc. No. 16, ¶ 101).

But the Court ultimately found that Plaintiff did not allege the texts from Defendant Branthoover were sent with the intention of defrauding Plaintiff or creating and filing

fraudulent court documents. *Id.* at p. 6. Instead, Plaintiff alleged those texts evidenced retaliation, malice, and involvement in the Texas litigation, and thus the Court found they were unrelated to the initial common scheme. Doc. No. 16, ¶¶ 49-52. The Court similarly found Plaintiff's allegations regarding communications between the Defendants were conclusory and failed to demonstrate their relationship to the common scheme. Doc. No. 29 at p. 6. Plaintiff is now attempting to "dress up" an argument he has already attempted to make, and as such this is not a proper basis for his Motion for Reconsideration.

The same is true for the open-ended continuity part of the pattern requirement. Plaintiff argues the Court overlooked the continuing threat of criminal activity posed by the "ongoing [divorce] litigation, where Defendants have a continuing incentive and opportunity to commit further acts of perjury, wire fraud, or other racketeering activity to achieve their ultimate goal." Doc. No. 31 at p. 5 (citing Doc. No. 16, ¶¶ 49-54, 86(ii), 101-02). As already discussed, the Court was aware of Plaintiff's attempts to plead a broader criminal purpose of defrauding Plaintiff through the divorce litigation. *See* Doc. No. 29 at p. 5 ("Nevertheless, Plaintiff points to the following [texts and communications] to demonstrate the duration of the scheme . . . But the communications . . . do [not] show continuity sufficient to demonstrate a pattern of racketeering activities."). Moreover, the Court ultimately found the text "messages—while taunting—[did] not plausibly support a continuing threat of criminal conduct." *Id.* at p. 6.

Plaintiff also appears to argue that the Court's focus on the enterprise's "single, narrow purpose" of removing Plaintiff from the family home ignores Tenth Circuit law stating that open-ended continuity may be found even where a RICO claim "is based on

one scheme involving one victim, but the plan contemplates open-ended fraudulent activity and does not have a single goal that, when achieved, will bring the activity to an end." Doc. No. 31 at p. 7 (citing *Torwest DBC, Inc. v. Dick*, 810 F.2d 925, 929 (10th Cir. 1987)).

As discussed, the Court did consider the enterprise's alleged broader purpose when considering open-ended continuity and found Plaintiff's arguments nevertheless failed to allege a pattern of racketeering activity. *See* Doc. No. 29 at p. 6. *See also id.* at p. 7 (quoting *Skurkey v. Daniel*, No. CIV-22-496-R, 2023 WL 101946, at *6 (W.D. Okla. Jan. 4, 2023)) ("'Courts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of a closed or open pattern of continuity.'") (citation and quotation marks omitted). Even if the Court had failed to consider that "broader purpose," and did so now, the alleged scheme is still quite narrow, with one victim (Plaintiff), few participants (Myers and Branthoover), and the limited goal of defrauding Plaintiff through divorce litigation. That hardly takes Plaintiff's allegations outside of *Skurkey*.

Even if the Court considered Plaintiff's allegedly "newly discovered" evidence—emails sent by Defendant Myers's attorney—it still could not conclude that Plaintiff pleaded open-ended continuity for the same reasons under *Torwest*. Based on Plaintiff's arguments regarding the emails, the Court cannot conclude they would broaden the purpose such that the allegations fall outside of *Skurkey*'s limitations on open-ended continuity.

Plaintiff argues the "newly discovered" emails violate the Hobbs Act, 18 U.S.C. § 1951(a), (b)(2), because they involve extortion under color of official right through "threaten[ing] adverse official action and misus[ing] the authority of the court." Doc. No.

32 at pp. 2-3. "Under 18 U.S.C. § 1961, instances of extortion or attempted extortion qualify as predicate acts." *Gillmor v. Thomas*, 490 F.3d 791, 798 (10th Cir. 2007). "Attempted extortion 'under color of official right' is 'a public official's attempt to obtain money not due him or his office.'" *Id.* (citation omitted). Construed liberally, Plaintiff may be attempting to allege a broader criminal purpose. But there are a host of potential problems with Plaintiff's Hobbs Act arguments.

First, based on Plaintiff's vague arguments, the Court cannot conclude his allegations regarding misuse of court authority plead extortion under the Hobbs Act. Courts have long held "meritless litigation is not extortion under § 1951." *Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003) (plaintiff's allegations that pleadings included deliberately false allegations did not constitute extortion). "[R]ecognizing abusive litigation as a form of extortion would subject almost any unsuccessful lawsuit to a colorable extortion (and often a RICO) claim." *Id.* "This rationale extends to threats of litigation, whether meritorious or frivolous." *Clark v. Stockton*, No. CIV-23-1147-SLP, 2024 WL 3258845, at *4 (W.D. Okla. June 12, 2024) (citation omitted).

Moreover, Plaintiff has not alleged a public official obtained a payment for which he was not entitled, knowing it was made in return for official acts. *See United States v. Vigil*, 523 F.3d 1258, 1266 (10th Cir. 2008) ("To prove extortion 'under color of official right, . . . the Government need only show that a public official has obtained a payment to which he was entitled, knowing that the payment was made in return for official acts.'") (citation omitted). And, assuming at least some of these emails are not new, this is another

attempt by Plaintiff to raise an argument that could have been alleged before entry of judgment.[3] The Court declines to engage with this argument further.

In conclusion, the Court will not reconsider its findings that the communications alleged by Plaintiff did not relate to the scheme to defraud Plaintiff and file false documents and did not plausibly support a continuing threat of criminal conduct.

Finally, the Court turns to Plaintiff's alternative Motion for Leave to Amend the First Amended Complaint under FED. R. CIV. P. 15(a)(2). Doc. No. 32. "The liberality of Rule 15 no longer applies after judgment has been entered." *Hartleib v. Weiser L. Firm, P.C.*, 861 Fed. App'x 714, 722 (10th Cir. 2021) (citation omitted). "'[O]nce judgment is entered the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to FED. R. CIV. P. 59(e) or 60(b).'" *Bell v. Soc. Sec. Admin. Ct. of Appeals (ALJ)*, No. CIV-16-1480-F, 2017 WL 3319379, at *1 (W.D. Okla. Jan. 13, 2017) (quoting *Cooper v. Shumway*, 780 F.2d 27, 29 (10th Cir. 1985)). Because this Court denies Plaintiff's Rule 59(e) motion, there is no justification for a post-judgment amendment.

Accordingly, Plaintiff's Rule 59(e) Motion for Reconsideration [Doc No. 31] is DENIED. Plaintiff's Motion for Leave to Supplement Rule 59(e) Motion for Reconsideration, and alternatively, Plaintiff's Motion for Leave to Amend the First Amended Complaint [Doc. No. 32], are both DENIED.

---

[3] Indeed, Plaintiff's treatment of the issue is disappointing. This hearkens back to a letter written by Judge Wayne Alley regarding motions for reconsideration. There, Judge Alley asked, "Is there some misapprehension widely held in the bar that our court, in ruling on a motion after it is fully briefed, is just hitting a fungo?" 62 Okla. B.J. 108 (1991); also cited in *United States v. Cos*, 498 F.3d 1115, 1123 n.2 (10th Cir. 2007).

IT IS SO ORDERED this 14th day of October, 2025.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE